## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PATTERSON 357, LLC,

    Plaintiff,

        v.

HEIDELBERG MATERIALS
MIDWEST AGG, INC.,

    Defendant.

No. 23-cv-02831

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's motion to dismiss, or to compel arbitration. For the reasons that follow, Defendant's motion to dismiss and compel arbitration (Dkt. 9) is granted in part. The parties are directed to proceed to arbitration; in all other respects, the case is stayed pending resolution of the anticipated arbitration.

## I.    BACKGROUND

Plaintiff Patterson 357 (Plaintiff) is an Illinois Limited Liability Company that engages in mining operations and the sale of building materials. (Dkt. 1-1 ¶¶ 1, 3; *see also* at 17.) Plaintiff entered into two agreements with Defendant Heidelberg Materials Midwest Agg, Inc. (Defendant), an "Aggregate Marketing and Sales Agreement" ("Marketing Sales Agreement") and "Aggregate Supply Agreement" ("Supply Agreement"). (*Id.* ¶ 3.) Under the Marketing Sales Agreement, Defendant has "an exclusive purchase right as to the aggregate materials mined and crushed"

at a mine that Plaintiff operates in Illinois. (*Id.* ¶ 10.) Under the Supply Agreement, Defendant promises to "sell to [Plaintiff] certain aggregates" that Defendant mines at its "own mines or facilities." (*Id.* ¶ 11.)

Plaintiff alleges that Defendant failed "to make timely payment pursuant to" the Marketing Sales Agreement, resulting in a "written notice of demand for payment and notice of default" being served on Defendant. (*Id.* ¶¶ 17–19.) Defendant allegedly owes Plaintiff an "Annual Minimum Royalty" in the amount of $110,270.16 for the year 2022. (*Id.* at 64.) This amount was determined "based on the outstanding portion of the annual minimum due of $701,250, less ($411,708.07) paid during the course of 2022 and less ($179,271.77) in a partial payment" Plaintiff had already received. (*Id.* at 64.) Defendant's failure to make this payment, including after a 30-day cure period after written notice was provided, allegedly violates both agreements and permits Plaintiff to "exercise and avail itself of any one or more of its aforementioned available cumulative remedies as provided under Section 20 of such Marketing Sales Agreement," of which Plaintiff elected to terminate the Marketing Sales Agreement. (*Id.* ¶¶ 20–24.)

Plaintiff filed suit in the Circuit Court of Illinois, Will County. (*Id.* at 2.) Defendant removed the case to federal court. (Dkt. 1.) Plaintiff seeks declaratory relief relating to Defendant's alleged breach of the Marketing Sales Agreement (Count I) and Supply Agreement (Count II), as well as a breach of contract claim related to the payments Defendant allegedly owes Plaintiff (Count III). (Dkt. 1-1 ¶¶ 25–27.)

Defendant moves to dismiss this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4. (Dkt. 9 at 1.) According to Defendant, Plaintiff is "subject to mandatory, binding arbitration under a written arbitration agreement in lieu of judicial proceedings." (*Id.*) Plaintiff's suit should thus be dismissed under Rule 12(b)(6) because, Defendant contends, Plaintiff is not entitled to seek relief in this forum. (*Id.* at 2.) In the alternative, Defendant moves this Court for "an order directing that such arbitration proceed in the manner provided for in such agreement, and [to] stay this action pending such proceedings." (*Id.*)

Plaintiff responds that it is not subject to the arbitration clause because its remedies "lie outside of the scope of the Marketing Sales Agreement's arbitration clause," and no further action was required. (Dkt. 18 at 1–2.) Plaintiff relies on the remedies clause of the Marketing Sales Agreement for this contention. (*Id.* at 1–2.) Plaintiff contends that the remedies clause and arbitration clause, when interpreted together, do not show that the parties intended Plaintiff to submit these claims through arbitration. (*Id.* at 4–5.)

## II.    LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

A motion under Rule 12(b)(3) challenges the propriety of venue in this District. Fed. R. Civ. P. 12(b)(3). Plaintiff bears the burden of establishing that venue is proper. *Interlease Aviation Investors v. Vanguard Airline, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003). Except as "otherwise provided by law, [a] civil action may be brought in— (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a), (b). In ruling on a motion to dismiss under Rule 12(b)(3), "the court takes all the allegations in the complaint as true unless contradicted by an affidavit and may examine facts outside of the complaint." *Interlease Aviation*, 262 F. Supp. 2d at 913.

Under the FAA, mandatory arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides that, if an agreement is governed by a valid arbitration clause, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitrations." 9 U.S.C. § 3. If a party to a contract containing an arbitration clause attempts to avoid arbitration and files suit in the district court, the other party may move to stay or dismiss the action on the ground that the FAA requires the arbitration clause of the contract to be enforced. *Id.* (authorizing a motion to stay); *see also id.* § 4 (authorizing a petition to compel arbitration); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007). When a court determines that the making of the arbitration agreement is not at issue, the FAA requires the court to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *Volt Info. Sciences, Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 474–75 ("[Section 4] confers only the right to obtain an order directing that arbitration proceed in the manner provided for in [the parties'] agreement.") (quotation marks omitted).

As the Seventh Circuit has explained, the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements and questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005)

(quotation marks omitted). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 1983); *see also Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998) ("[O]nce it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration.").

## III.  DISCUSSION

### A.  Plaintiff is Required to Arbitrate this Dispute.

Under the FAA, an arbitration clause in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections 3 and 4 of the FAA empower federal courts to stay litigation and compel arbitration according to the terms of the parties' agreement. 9 U.S.C. §§ 3–4. Because "arbitration is a matter of contract," however, a federal court cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (cleaned up). To compel arbitration under the FAA, this Court first must find that (1) a written arbitration agreement exists between the parties; (2) there is a dispute among the parties within the scope of the arbitration agreement; and (3) one of the parties is refusing to comply with the arbitration agreement by declining to participate in arbitration. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005). The party opposing arbitration bears the burden of establishing why the arbitration clause

6

should not be enforced. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).

In this case, the parties agree that a written arbitration agreement exists and that Plaintiff has refused to arbitrate; only the second factor (the scope of the arbitration agreement) is at issue. (Dkt 9 at 3; Dkt. 18 at 1–2.) As the party opposing arbitration, Plaintiff has the burden to show that the dispute falls outside the scope of the agreement. *Hoenig v. Karl Knauz Motors.*, 983 F. Supp. 2d 952, 962 (N.D. Ill. 2013) (citing *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226–27 (1987)). To resolve this question, the Court must assess the parties' arbitration agreement under Illinois law to determine whether there exists an enforceable delegation clause. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F. 3d 705, 711 (7th Cir. 2019).

The arbitration clause in the Marketing Sales Agreement states:

> If any disagreement arises between the Parties concerning any matters set forth in this Agreement, related to this Agreement, or arising between the Parties as a result of this Agreement (a "Dispute"), and the Parties are unable to resolve the Dispute by negotiation pursuant to the provisions of Section14(a) and (b) or through the Operating Committee, then the Dispute may only be settled by mandatory, binding arbitration in accordance with this Section 14(c) (unless otherwise specifically provided in Section 14(d) below), and judgment on the award rendered in such arbitration may be entered in any court having jurisdiction. Notwithstanding the foregoing provisions, however, either Party may seek provisional injunctive or other equitable relief from any court of competent jurisdiction to preserve the Party's rights under Section 19 of this Agreement, pending arbitration, and such court may grant such relief without requiring the Party to post bond or to show that an adequate remedy is unavailable at law.

(Dkt. 1-1 at 30.)

Plaintiff contends that, since the issue is Plaintiff's pursuit of a declaratory

judgment "to terminate the two Agreements between the parties" and a breach of contract claim "related to [Defendant's] breach of the Marketing Sales Agreement," rather than a breach by Plaintiff, arbitration is not required. (Dkt. 18 at 5.) Plaintiff also alleges that, since it advised Defendant "in accordance with the Marketing Sales Agreement" that Defendant was in default but Defendant failed to cure, Plaintiff was justified in seeking the remedies provided for in the Marketing Sales Agreement—including filing suit in a court of law. (*Id.*) Defendant responds that the arbitration clause uses very broad language, "covering any disagreement between the parties concerning, related to, or arising from the Agreement." (Dkt. 21 at 3.) According to Defendant, this lawsuit "falls squarely within the dispute resolution procedures" in the Marketing Sales Agreement, "which contains no carve-out for the matters raised in [Plaintiff's] complaint." (*Id.* at 1.)

In general, courts, not arbitrators, decide "whether a concededly binding arbitration clause applies to a certain type of controversy." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). But an agreement to submit a dispute over arbitrability to the arbitrator will be enforced where there is " 'clear and unmistakable evidence' that the parties wanted an arbitrator to resolve the dispute." *Oxford*, 569 U.S. at 569 n.2 (quoting *AT & T Techs. Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). Neither party argues that such a clause exists, so the Court must decide whether the arbitration clause applies to this dispute.

To determine whether a contract's "arbitration clause applies to a given

dispute," the Court must apply "state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). In doing so, the Court shall be "mindful that both the law and public policy strongly favor arbitration." *Int'l Bhd. of Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014). Arbitration should be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010).

Because Plaintiff signed an unambiguous arbitration clause that covers this dispute, Plaintiff is bound to proceed to arbitration. Under the relevant clause, if the parties come to a dispute

> concerning any matters set forth in this Agreement, related to this Agreement, or arising between the Parties as a result of this Agreement (a "Dispute"), and the Parties are unable to resolve the Dispute by negotiation pursuant to the provisions of Section14(a) and (b) or through the Operating Committee, then the Dispute may only be settled by mandatory, binding arbitration.

(Dkt. 1-1 at 30.) At issue in this case is whether Plaintiff is entitled to terminate the Agreements with Defendant based on Defendant's failure to make certain payments under the Marketing Sales Agreement. In other words, Plaintiff's claims are grounded in Defendant's alleged breach of its obligations under the Marketing Sales Agreement. Because Plaintiff seeks direct benefits under the Marketing Sales Agreement, it cannot ignore the agreement's arbitration clause.

Plaintiff's attempt to escape arbitration by directing attention to other paragraphs of the Marketing Sales Agreement, claiming the allegation is really

rooted in other clauses not covered by the arbitration clause, is unpersuasive. (Dkt. 18 at 4–13.). Plaintiff agreed to submit any complaint related to Defendant's alleged breach the Marketing Sales Agreement, and subsequent default, to arbitration. (Dkt. 1-1 at 30.) Moreover, having already established that "the parties have a contract that provides for arbitration of *some issues between them*, any doubt concerning the scope of the arbitration clause is resolved *in favor* of arbitration." *Gore*, 666 F.3d at 1032–33 (citing *Cone*, 460 U.S. at 24–25) (emphasis added); *see also Flume*, 139 F.3d at 1136 (same). Even if this dispute did not clearly fall within the arbitration clause, the Court would nonetheless compel arbitration because it cannot be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" this dispute. *Granite Rock Co.*, 561 U.S. at 314.

This arbitration clause is similar to arbitration clauses courts have routinely and previously interpreted as extremely broad and encompassing claims even tangentially related to the agreements. For example, the language "arising out of and relating to" an agreement covers "all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts . . . ." *Gore,* 666 F.3d at 1036; *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) (arbitration clause with the language "arising out of or relating to" created a "presumption of arbitrability" that extended to claims of tortious interference).

Similarly, courts have construed the phrase "arising out of the agreement" to "reach all disputes having their origin or genesis in the contract, whether or not they

10

implicate interpretation or performance of the contract per se." *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993); *see also Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (characterizing an arbitration clause covering all claims either "arising out of" or "relating to" the parties' agreement as "a very broad, standard arbitration clause"); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53–54 (7th Cir. 1995) (giving an expansive reading to an arbitration clause that governed all claims "relating to" breach of the parties' agreement). All of the claims in the complaint are therefore subject to arbitration.

## IV. CONCLUSION

Defendant's motion to dismiss is denied, but Defendant's motion to compel arbitration (Dkt. 9) is granted. In accordance with the terms of the Marketing Sales Agreement, the parties must proceed to arbitration under 9 U.S.C. § 4. A stay of litigation will be imposed during the pendency of the arbitral proceedings.

SO ORDERED in No. 23-cv-02831.

Date: March 27, 2024

JOHN F. KNESS
United States District Judge